UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 10-259-JBC

FORCHT BANK, NA,                                                                           PLAINTIFF,

V.               **MEMORANDUM OPINION AND ORDER**

BANCINSURE, INC.,                                                    DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on Bancinsure's motion for summary judgment (R. 37) and Forcht Bank's motion for partial summary judgment (R. 38). Forcht Bank brought suit against Bancinsure when the latter refused payment under a financial institution bond. The court will grant Bancinsure's motion and deny Forcht Bank's motion because Forcht Bank's loss did not result directly from a forgery as required under Insuring Agreements D and E of the bond, but rather from Forcht Bank's accepting collateral with a greatly misrepresented value.

In June 2009, Richard Brunsman, Jr., approached Forcht Bank to obtain a $1 million loan for his business, Aircraft Services, LLC. As collateral for the loan, Brunsman offered a life insurance policy issued by Lincoln National Life Insurance with a purported net cash surrender value of around $1.8 million. Forcht Bank conditionally approved the loan contingent upon Brunsman's assignment of the life insurance policy. Brunsman submitted the assignment documents, namely, an Assignment of Life Insurance Policy, a Consent and Request for Assignment of Life

Insurance Policy, and an Assignment of Life Insurance or Annuity Policy Contract as Collateral Security, each purportedly signed by a representative of Lincoln National, and Forcht Bank funded the loan. When Brunsman later defaulted on the loan and declared bankruptcy, Forcht Bank discovered that the actual cash surrender value of the policy was only $65,000.00 instead of the $1.8 million that Brunsman had represented and that Brunsman had deliberately forged the signatures of the purported Lincoln National representative on each of the assignment documents. Forcht Bank sought indemnity for its loss from Bancinsure under a financial institution bond. When Bancinsure refused to pay under the bond, Forcht Bank brought this suit for breach of contract and bad faith. Both parties moved for summary judgment on the issue of whether Forcht Bank is entitled to coverage under Insuring Agreement D or E of the bond.

Forcht Bank cannot recover its loss from Bancinsure under Agreement D or E because its loss did not "result[] directly from" Brunsman's forgeries as required by the bond, but from Forcht Bank's acceptance of collateral worth far less than represented. The sections of the bond in dispute, Insuring Agreements D and E, share the same high standard for causation which is a condition precedent to coverage. Agreement D relevantly provides indemnity for

> **[l]oss resulting directly from** . . . transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any financial

2

> institution but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or financial institution[.]

R. 38-18 at 17 (emphasis added). Agreement E relevantly provides indemnity for

> **[l]oss resulting directly from** the Insured having, in good faith . . . acquired, sold or delivered, given value, extended credit or assumed liability on the faith of any original . . . Security Agreement . . . which bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery.

R. 38-18 at 18 (emphasis added). Here, the insurance policy that Brunsman presented as collateral was worth only $65,000.00, less than one twenty-fifth the amount Brunsman asserted. Additionally, Forcht Bank asserts that the policy had already been assigned to another bank before Brunsman ever approached Forcht Bank about a loan. A loss does not result directly from a forgery where the purported collateral is fictitious, or in other words, where the bank would not be able to recover even if the signatures were authentic. *See Flagstar Bank, F.S.B. v. Fed. Ins. Co.*, 260 Fed.App'x. 820, 822 (6th Cir. 2008) (unpublished decision); *see also Union Planters Bank, N.A. v. Continental Casualty Co.*, 478 F.3d 759, 765 (6th Cir. 2007). Here, the existence of the collateral was not completely fictitious, as the insurance policy actually did exist, but its purported value was so inflated above its actual value that Forcht Bank would have been able to recover only a small percentage of its losses by seizing the collateral. Furthermore, because the policy may have already been assigned to another bank, its value may have been otherwise diminished or extinguished. The inauthenticity of the Lincoln National

3

representative's signatures had no bearing on Forcht Bank's ability to collect, because even if those same documents had borne legitimate signatures, the policy's inherent lack of value would have been unchanged. Forcht Bank's loss, therefore, did not result directly from the forgery.

Forcht Bank argues that it would not have extended credit but for the existence of the illegitimate signatures on the assignment documents, because if the signatures had been legitimate, the assignment documents would necessarily have been different in that they would have reflected the true value of the policy. This argument is inapplicable under the terms of the bond because the bond protects only from loss resulting directly from a forgery; it is not credit insurance. *See Bank of Bozeman v. Bancinsure, Inc.*, 404 Fed. App'x. 117, 119 (9th Cir. 2010). This result is dictated by the heightened standard for causation presented by the "loss resulting directly from" language in Insuring Agreements D and E. Forcht Bank's purported reliance on these documents in determining whether to make the loan is insufficient to meet this standard. The high burden under this language was discussed in *First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971 (7th Cir. 2007). In that case, the same provisions of a nearly identical financial institution bond were at issue; the salient difference was that while Agreement D contained the "loss resulting directly from" language, Agreement E in that bond covered "loss **by reason of** the insured" acting on reliance on a forgery. *Id.* at 979 (emphasis added). There, the court held that because the

forged documents influenced the bank to extend credit, the bank's loss was by reason of the bank acting in reliance on a forgery and was therefore covered under Agreement E. Here, however, Agreement E covers only loss "resulting directly from" the forged documents themselves, and does not cover losses caused by Forcht Bank's reliance on those documents in extending credit.

The situation in this case is distinguishable from that in *Union Planters*, in which the Sixth Circuit held that a lending bank could recover where a mortgage-banking company had used the signatures and information obtained from legitimate mortgages to generate sham mortgages that it presented for collateral in obtaining a warehouse line of credit. *See* 478 F.3d at 765. There, the financial institution bond, like the bond in this case, required the plaintiff to demonstrate that its losses were directly caused by the forgeries. *See id.* In that case, however, the mortgage loans at issue had named borrowers who were actual customers of the mortgage-banking company and permanent lenders had purchased some of those fraudulent loans. Had the loans borne legitimate signatures, they would have had value. *See id.* The *Union Planters* court distinguished that situation from that in *Flagstar Bank*, where even if the loans had borne legitimate signatures, they would have been worthless. The life insurance policy assignment documents in this case are much closer in nature to the assets at issue in *Flagstar Bank*, because the forged signatures on the assignment documents do not affect the underlying minimal value of the asset.

Similarly, Forcht Bank cannot rely upon *Beach Cmty. Bank v. St. Paul Mercury*

5

*Ins. Co.*, 635 F.3d 1190 (11th Cir. 2011), because that case dealt with a forged guaranty that would have had value had its signature been authentic. *Beach Community* seems on point because the purported guarantor had no attachable assets at the time Beach Community Bank tried to collect on the forged guaranty; however, it is not on point because the Eleventh Circuit held that a guaranty would have value even in the absence of attachable assets because it imposed a legal obligation on the guarantor. With a judgment against the guarantor, Beach Community Bank could have attached any future non-exempt income the guarantor might receive. Here, there is no such legal obligation, but rather only a largely worthless asset—the life insurance policy.

A showing that Forcht Bank's loss resulted directly from a forgery is a condition precedent for coverage under Insuring Agreements D and E of the bond. Because Forcht Bank's loss did not result directly from a forgery, but rather from Forcht Bank accepting collateral that is nearly worthless regardless of whether the signatures on the assignment documents are legitimate,

**IT IS ORDERED** that Bancinsure's motion (R. 37) is **GRANTED** and Forcht Bank's motion (R. 38) is **DENIED.**

A separate judgment will issue.

Signed on October 11, 2011

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY